IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN PHILIP HASTY, :

    Plaintiff, :

vs. : CA 10-0616-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
                                          :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 22 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the November 17, 2011 hearing before the Court, it is determined that the Commissioner's decision denying plaintiff benefits

should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to post-traumatic arthritis of the left knee, post-tibial plateau fracture, arthritis of the hip, arthritis of the back, borderline intellectual functioning, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.**
>
> **2.     The claimant has not engaged in substantial gainful activity since June 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.     The claimant has the following severe impairments: post traumatic arthritis of the left knee post tibial plateau fracture; arthritis of the hip; and borderline intellectual functioning  (20 CFR 404.1520(c) and 416.920(c)).**
>
> In addition to the severe impairments listed above, the undersigned notes that the claimant also underwent a successful hernia repair (Exhibit 11F). At the hearing, the claimant did not mention one residual symptom or limiting effect related to this hernia repair. Because the claimant has no residual symptoms or limitations related to this operation, the claimant's hernia repair does not even minimally impact his ability to perform work-related activities and, therefore, this hernia repair does not meet the definition of a severe impairment.
>
> .     .     .

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: the claimant can lift or carry no more than 20 pounds occasionally and 10 pounds frequently; the claimant can sit for up to eight hours in an eight-hour day; the claimant can walk or stand for up to two hours in an eight-hour day; the claimant can rarely push or pull with the left lower extremity, but can frequently push or pull with the right lower extremity; the claimant cannot climb ladders, ropes, or scaffolds; the claimant can occasionally bend or stoop; the claimant cannot crouch, crawl or kneel; the claimant can occasionally climb stairs; the claimant can understand, remember and carry out simple, routine, and repetitive tasks; and the claimant could be expected to have one unscheduled absence from the worksite per month.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, *once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.*

At the hearing the claimant devoted most of his testimony to the pain in his left knee. This pain first arose, the claimant says, when he injured his left knee in 2004. The claimant alleges that this extreme knee pain combines with his serious hip *and back pain* to limit his physical

functional capacity. This pain, the claimant says, is worse during rainy weather. Because of this knee and hip pain, the claimant says he cannot lift more than 80 to 100 pounds occasionally and 20 to 30 pounds frequently; cannot walk for half a block; cannot stand for more than 10 to 15 minutes at a time; and cannot sit for more than 10-15 minutes at a time. The claimant also says that he cannot crawl at all or bend at the waist. The claimant testified that he has no problems with his hands or arms.

***The claimant also testified that his physical functioning is limited not only by his pain, but also his obesity***. The claimant is 5'10" and estimates he weighs 345 pounds.

Regarding his activities of daily living, the claimant says that he can do "a little work around the house"; take a shower and dress on his own; and drive a car to the grocery store. The claimant says he is able to grocery shop for about 30 minutes. After 30 minutes, the claimant says the pain becomes too intense.

***After consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.***

The undersigned finds that the claimant's physical severe impairment[]s certainly preclude him from returning to his past relevant work because all of his past work requires performing at a medium to heavy exertional level according to the testimony of the impartial vocational expert that will be discussed below. However, the medical evidence and the evidence pertaining to the claimant's activities of daily living do not support the claimant's contention that he cannot perform light or sedentary work.

In terms of all of the claimant's alleged physical symptoms and limitations, the claimant's activities of daily living indicate that he still retains the residual functional capacity to perform light or sedentary work. For example, the claimant testified at the hearing that he can lift 80-100 pounds occasionally and 20-30 pounds frequently. This lifting ability is more than adequate for light or sedentary jobs. Similarly, the claimant testified that he does some work around the house; can shower and dress without assistance; can drive a car; and can spend about 30 minutes walking through a grocery store picking up items. These daily activities are inconsistent with the claimant's principal allegation that his physical

severe impairments preclude him from performing any work-related activities.

Even more strikingly inconsistent than his daily activities are the work activities that the claimant performs around the farm. According to the treatment records of chiropractor Dr. Jerry Schreiner, as recently as June 22, 2009, the claimant was riding a tractor around the farm (Exhibit 20F). On January 15, 2009, Dr. Schreiner's treatment records show that the claimant was still "farming for a living." Similarly, on March 26, 2008, the treatment records state that the claimant was recently doing "a lot of tractor riding." The undersigned cannot reconcile the claimant's allegation that he is too limited by his severe physical impairments to work even a light or sedentary job, and the abundant documentary evidence of the work he performs on his farm. These farm activities are inconsistent with the claimant's allegations of back, knee, and hip pain. This inconsistency undermines the credibility of the claimant's allegations.

Not only are the claimant's daily activities and farm activities inconsistent with his allegations, *the objective medical evidence is also inconsistent with his allegations*. For example, regarding the claimant's left knee pain which he alleges is his most limiting symptom, the medical records of Grove Hill Memorial Hospital are inconsistent with the claimant's allegations (Exhibit 4F). According to these records, the surgery performed on the claimant's knee was successful and by December 13, 2005, the claimant's fracture had healed and his tibial plateau was in good position. In follow-up visits is was determined that the claimant did experience some residual pain, but these symptoms were controllable using steroid injections (Exhibit 12F). On August 7, 2007, the claimant's treating physician opined that the claimant could not return to heavy labor, but could perform his day-to-day functions. This opinion is consistent with the undersigned's finding that the claimant's symptoms preclude him from returning to the heavy and medium exertional level work the claimant performed in the past, but his symptoms do not preclude him from performing light or sedentary work.

The undersigned also notes an X-ray of the claimant's lumbar spine that contradicts the claimant's allegations regarding lower back pain (Exhibit 6F). This X-Ray from August 9, 2005, interpreted by Dr. Himath Singh[,] showed no evidence of fracture, and showed preserved disc spaces in the claimant's lumbar spine. In short, the X-ray revealed no significant abnormalities that would support the claimant's allegation of intense back pain.

The undersigned finds that the most notable inconsistency is between the opinion of the claimant's treating physician, Dr. John Mitchell, and the claimant's allegation that his symptoms preclude him from performing all work related activities (Exhibit 21F). In stark contrast to the claimant's allegation that he can only sit, stand or walk for 10 to 15 minutes at a time, Dr. Mitchell opined that the claimant can sit for eight hours in an eight-hour day; and stand or walk for four hours in an eight-hour day. This inconsistency between the opinion of Dr. Mitchell and the claimant's hearing testimony undermines the credibility of the claimant's allegations.

. . .

As for the opinion evidence, the undersigned assigns controlling weight to the opinion of treating physician Dr. John Mitchell (Exhibit 21F). According to Dr. Mitchell, the claimant can sit for up to eight hours in an eight-hour day; can stand or walk for four hours in an eight-hour day; can lift or carry 20 pounds occasionally and 10 pounds frequently; can push and pull rarely with the left knee but frequently with the right knee; cannot climb stairs or ladders; can bend or stoop occasionally; and can reach, gross manipulate, operate motor vehicles, and work around hazardous machinery frequently. Dr. Mitchell also opined that the claimant's impairments would cause one unplanned absence from work per month. The established residual functional capacity fully incorporates the opinion of Dr. Mitchell.

The undersigned gives *significant weight* to the opinion of *Dr. Sandra Knox* contained in the physical residual functional capacity assessment she completed (Exhibit 17F). According to Dr. Knox the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently; can sit for six hours in an eight-hour day; can stand or walk for two hours in an eight-hour day; can climb ramps or stairs occasionally; can balance and stoop frequently; can kneel, crouch, and crawl occasionally; cannot climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to unprotected heights and hazardous machinery. The established residual functional capacity incorporates nearly all the limitations noted in the opinion of Dr. Knox. The undersigned rejects Dr. Knox's opinion regarding workplace hazards because the treatment records clearly show that the claimant has the capacity to operate hazardous machinery such as his farm tractor (Exhibit 22F).

. . .

In sum, the above residual functional capacity assessment is supported by the claimant's testimony regarding his activities of daily living; the claimant's work activities around the farm; and the medical opinions of Doctors Mitchell, *Knox*, Blanton, and Simpson.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7. The claimant was born on March 20, 1961 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative sedentary, unskilled occupations such as an addresser (DOT 209.587-010, 7,000 jobs in the United States, 100 jobs in Alabama), a food and beverage order clerk (DOT 209.567-0142, 3,000 jobs in the United States, 250 jobs in Alabama), and a charge account clerk (DOT 205.367-014, 38,000 jobs in the United States, 570 jobs in Alabama).

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 710-711, 712-714, 715, 716, & 716-717 (some emphasis added).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In

evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id*. at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those unskilled sedentary jobs identified by the vocational expert during the hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ made the following errors: (1) she erred in ignoring the pain assessment of Dr. John Mitchell; (2) she erred in ignoring the assessments of Jerry Schreiner, DC, plaintiff's long-time treating chiropractor; (3) she

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

9

erred in failing to identify obesity as a severe impairment; and (4) the ALJ conducted a flawed credibility evaluation. Because the undersigned agrees with the plaintiff that the ALJ erred in failing to consider all the evidence of record, the Court need not consider plaintiff's third and fourth assignments of error. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). Stated differently, the burden is on the Commissioner at the fifth step of the sequential evaluation process to establish capacity to perform other work and thereby to establish the claimant's residual functional capacity. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The ALJ in this case certainly recognized that in reaching her decision on residual functional capacity, it was incumbent upon her not only to consider the plaintiff's allegations of pain and other symptoms but, as well, the opinion evidence of record. (*Compare* Tr. 712 ("In making this [residual functional capacity] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]") and Tr. 713 ("[O]nce an underlying physical or mental impairment(s) that

could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.") *with* Tr. 715 ("As for the opinion evidence, the undersigned assigns controlling weight to the opinion of treating physician Dr. John Mitchell[.] . . . The undersigned gives ***significant*** weight to the opinion of ***Dr. Sandra Knox*** contained in the physical residual functional capacity assessment she completed[.]") and Tr. 716 ("***In sum, the above residual functional capacity assessment is supported by*** the claimant's testimony regarding his activities of daily living; the claimant's work activities around the farm; and ***the medical opinions of Doctors*** Mitchell, ***Knox***, Blanton, and Simpson.").) Thus, the ALJ certainly recognized her duty (*see* Tr. 712-716) to state with particularity the weight accorded "to each item of evidence[,]" *Randolph v. Astrue*, 291 Fed.Appx. 979, 982 (11th Cir. Sept. 10, 2008); *see also Brunson v. Astrue*, 2011 WL 839366, *12 (M.D. Fla. Mar. 7, 2011) ("[T]he ALJ 'should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence.'"), including the different medical opinions, and the reasons for his decision, *Lawton v. Commissioner*

11

*of Social Security*, 431 Fed.Appx. 830, 834 (11th Cir. June 22, 2011). Indeed, "[a] statement that the ALJ carefully considered all the testimony and exhibits is not sufficient[,]"³ because "[w]ithout an explanation of the weight accorded by the ALJ, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (footnote added), citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *see also Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'").

> Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Id.* (internal citations omitted). In addition, remand is appropriate "when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1219 (11th Cir. 2001) (citation omitted).

---

³ Thus, the ALJ's various statements that she had considered all of the evidence (*see, e.g.,* Tr. 712 ("**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work** . . . .")) are not sufficient.

12

In this case, the ALJ makes no mention in her decision of Dr. John Mitchell's pain assessment (Tr. 688)[4] or the physical medical source statement provided by plaintiff's treating chiropractor, Jerry L. Schreiner (Tr. 690), along with his many office notes (*see, e.g.*, Tr. 691-696). And while the Eleventh Circuit, in *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (2005), determined that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," the *Dyer* panel limited its determination to that situation in which "the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole.'" *Id.* at 1211, quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Here, the very best comment this Court could make about the ALJ's decision is that it constitutes, under *Dyer*, an improperly broad (albeit

---

[4] While the Commissioner, in his brief, argues that the ALJ fully addressed Dr. Mitchell's pain assessment and gave it controlling weight (Doc. 29, at 8 ("Dr. Mitchell's pain assessment was contained *within* Dr. Mitchell's four-page opinion at "Exhibit 21F," which was specifically discussed and weighed by the ALJ (*see* Tr. 685-88). In her decision, the ALJ stated she gave controlling weight to Dr. Mitchell's opinion at "Exhibit 21F" (Tr. 715). The ALJ then fully incorporated Dr. Mitchell's opinion into her residual functional capacity finding (Tr. 715). Here, the ALJ adequately addressed Dr. Mitchell's pain assessment and gave it controlling weight.")), this Court cannot agree given that the degree of pain assessed by Dr. Mitchell (Tr. 688 ("Pain is present to such an extent as to be distracting to adequate performance of daily activities. . . . [W]alking . . . [g]reatly increase[s] pain to such a degree as to cause distraction from task or total abandonment of task. . . . Significant side effects may be expected which may limit effectiveness of work duties or performance of everyday tasks, e.g., driving.")) arguably rises to that level which the vocational expert testified would preclude work (*compare id. with* Tr. 91 (VE's testimony that if plaintiff experienced moderately severe to severe pain in his left knee daily "[t]his would negatively impact [] attention and concentration and, therefore, productivity, and pain at this level on a daily basis would preclude competitive employment.")). Moreover, the ALJ simply said nothing about the findings on the pain assessment, as she did with the doctor's findings on the physical medical source statement (*compare* Tr. 687 *with* Tr. 712), thereby casting doubt on the defendant's argument in this regard.

13

implicit) rejection of every piece of evidence in the record favorable to plaintiff.[5] *Cf. Cowart, supra,* 662 F.2d at 735 (recognizing an ALJ's duty to be "'diligent in ensuring that favorable as well as unfavorable'" evidence is explored). As a result, not only is this Court unable to conclude that the ALJ considered Hasty's condition as a whole, *Dyer, supra,* but, as well, it is impossible for this Court "'to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel, supra,* 631 F.3d at 1179, quoting *Cowart, supra,* 662 F.2d at 735. Particularly troubling in this case is the ALJ's statement that she accorded "significant weight" to the RFC assessment of "Dr. Sandra Knox" (Tr. 715), even though Knox is a disability examiner/specialist (*see, e.g.,* Tr. 218) as opposed to a physician—and, therefore, her opinion is entitled to no weight—[6] yet failed to mention or assign weight to the treating

---

[5] In other words, as observed in *Brunson, supra,* at *12, "there is a difference in failing to discuss a pain medication the plaintiff had been prescribed on one occasion (as was the case in *Dyer*) and failing to discuss probative evidence of [at least] one of Plaintiff's diagnoses (as is the case here)."

[6] *Compare Traylor v. Astrue,* 2010 WL 920114, *5 (M.D. Ala. Mar. 11, 2010) ("The referenced opinion, however, is not that of a physician; it is the opinion of the DDS disability examiner, Karen Wiggins. Her opinion is not, as the Appeals Council apparently believed, entitled to consideration as an expert medical opinion." (internal citation omitted)); *Foxx v. Astrue,* 2009 WL 2899048, * 7 (S.D. Ala. Sept. 3, 2009) ("While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of examining sources, there is no evidence before the Court that Carol M. Davis, S.D.M., the person who completed the RFC assessment is a medical consultant whose opinion qualifies as a medical source opinion."); *Casey v. Astrue,* 2008 WL 2509030, *4 n.3 (S.D. Ala. June 19, 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight."); and *Bolton v. Astrue,* 2008 WL 2038513, *4 (M.D.Fla. May 12, 2008) ("'An SDM is not a medical professional of any stripe, and' a finding from such an individual is 'entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.'") *with* 20 C.F.R. § 404.1513(c) (2011) ("At the administrative law judge and Appeals Council levels, and at the reviewing official, administrative law judge, and Decision Review Board levels in claims adjudicated (Continued)

chiropractor's physical medical source statement (Tr. 690), even though the Commissioner's regulations define a chiropractor as an "other" medical source, *see* 20 C.F.R. § 404.1513(d)(1) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to—(1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)[.]").

To affirm the ALJ's decision in this case would constitute an abdication of this Court's "'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Winschel, supra,* 631 F.3d at 1179, quoting *Cowart, supra,* 662 F.2d at 735. Accordingly, this cause must be remanded to the Commissioner of Social Security for further consideration not inconsistent with this decision.[7]

---

under the procedures in part 405 of this chapter, we will consider residual functional capacity assessments made by State agency medical and psychological consultants, medical and psychological experts . . ., and other program physicians and psychologists to be 'statements about what you can still do' made by non-examining physicians and psychologists based on their review of the evidence in the case record.") & (d)(1)-(4) (describing evidence that may be used from other acceptable medical and non-medical sources but never identifying disability specialists as an acceptable non-medical source); *cf. Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (the opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision.").

[7] On remand, the ALJ should also specifically address whether plaintiff's obesity is a severe impairment, particularly in light of Hasty's testimony regarding the impact of his obesity, as recounted by the ALJ (Tr. 713 ("The claimant also testified that his physical functioning is limited not only by his pain, but also his obesity. The claimant is 5'10" and estimates that he weighs 345 pounds.")), and the process by which the ALJ determined (Continued)

# CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 14th day of December, 2011.

                        s/WILLIAM E. CASSADY
                        **UNITED STATES MAGISTRATE JUDGE**

---

plaintiff's hernia repair was not a severe impairment (Tr. 710-711 ("In addition to the severe impairments listed above, the undersigned notes that the claimant also underwent a successful hernia repair (Exhibit 11F). At the hearing, the claimant did not mention one residual symptom or limiting effect related to this hernia repair. Because the claimant has no residual symptoms or limitations related to this operation, the claimant's hernia repair does not even minimally impact his ability to perform work-related activities and, therefore, this hernia repair does not meet the definition of a severe impairment.")). In addition, the undersigned is curious why the ALJ did not list plaintiff's back impairment as a severe impairment given her numerous comments in the decision about Hasty's complaints of back pain and the fact that the treatment afforded by plaintiff's chiropractor focused a lot on his back.